## WELLS LATHROP *vs.* PRESIDENT, DIRECTORS, &c. OF AMHERST BANK.

An agreement between A. and B., that B. shall prosecute and manage A.'s suit at law, as A.'s agent, and that he shall receive, for his services, a certain per cent. on the amount that shall be recovered, and that, if he does not recover, A. shall pay him no more than his actual expenses, amounts to champerty, and is so far illegal and void, that B after obtaining judgment for A, cannot maintain an action on the agreement.

ASSUMPSIT to recover $500 for services rendered to the defendants, in the management and settlement of suits brought by them against Luther Root and others.

The parties submitted the case to the court on the following facts agreed : At a meeting of the stockholders of the Amherst Bank, held October 3d 1842, it was voted, that an agent be appointed to prosecute all claims or suits of the bank against any person or persons liable thereto ; and by ballot Wells Lathrop was chosen as agent for the bank for the prosecution of all suits in favor of the bank. It was also voted, that Wells Lathrop, in connexion with the directors, be authorized to make any compromise of any claim on the part of the bank against any person or persons, which they may deem for the interest of the bank to make.

At a meeting of the directors of the Amherst Bank, held January 11th 1843, the following vote was passed : "Wells Lathrop being appointed agent, by the stockholders of the Amherst Bank, at a meeting held October 3d 1842, and the condition of his acceptance of the appointment having been made known to the directors ; therefore voted, that we accept the terms proposed, and allow Wells Lathrop five per cent. on the amount, in case he recovers in the suits now pending in favor of the bank, and in case he does not recover, the bank are to pay him no more than his actual expenses, without allowing him any thing for his time." This vote was communicated to the plaintiff, soon after it was passed, and he thereupon accepted the agency, and proceeded to the management of the said suits, and the preparation of them for trial, and

continued the management of them, until judgment was recovered in them, at the April term of the supreme judicial court in 1843, for the sum of $10,000.

*R. A. Chapman & Ashmun*, for the plaintiff.

*Forbes & Dickinson*, for the defendants.

The decision was made at September term 1846.

DEWEY, J.   The contract upon which the plaintiff seeks to recover was illegal, being in violation of the principles of law in reference to maintenance and champerty.   Such agreement for a proportionate share in the fruits of litigation, as a consideration for services rendered in conducting and prosecuting, with success, a suit at law, where the party has no interest, legal or equitable, and no claim or expectancy, even remotely contingent, has been deemed contrary to public policy, and proscribed by statutes and the common law.   The *Sts.* 3 and 13 Edw. 1 related to officers of the king; but the provisions were further extended, and made applicable to other persons, by *St.* 28 Edw. I.   2 Inst. 207, 563.   Independently of these statutes, such agreements seem also to have been considered as illegal at common law.

It is, however, contended, on the part of the plaintiff, that the evils originally attending such contracts, and the undue influence supposed to result from them, in the prosecution of litigated claims, no longer have any real practical influence, and that, in view of this change, and in the absence of any statute of this Commonwealth forbidding such contracts, we ought now to introduce a more liberal system in reference to contracts like that now under consideration.

No doubt is entertained but that the earlier doctrine as to maintenance has been very essentially modified.   Its application to many cases entirely venial in their character, and not within the mischief to be guarded against in the administration of justice, has been denied and abandoned.   Hence the many cases that have occurred, and are continually occurring, which form exceptions to the general rule that declares maintenance and champerty illegal; cases of remote and contingent interests, or possibility of interest in the subject litigated;

Lathrop v. Amherst Bank

cases of affinity in the persons intermeddling or aiding in con-
ducting the suit ; or other equally justifying causes. But
while the exceptions to the rule have been thus multiplied,
and have come to be liberally considered and allowed, the
rule itself has not been abrogated, but, on the contrary, has
become the subject of statute enactment in some of our sister
States, and, where no statute exists, is recognized as a part of
the common law applicable to such contracts.

It is not, however, our purpose to consider this question as
one of novel impression, or pronounce an opinion upon the
point whether, in the present state of society, more good or
evil may result from giving effect to a defence of this nature.
The question before us is merely, what is the law of this
Commonwealth in reference to it. And as to that, we think
there can be no reasonable doubt. It has become a well set-
tled principle in our system of jurisprudence ; so much so,
that we should not feel at liberty to abrogate it by force of a
judicial opinion merely. The point now in issue arose dis-
tinctly in the case of *Thurston* v. *Percival*, 1 Pick. 415. The
facts were substantially the same, and all those considerations,
which have now been pressed upon us as reasons for repu-
diating the illegality of such contracts, were equally applica-
ble in that case. This court, after a full argument, and upon
mature consideration, decided against the validity of the con-
tract. Although more than twenty years have elapsed since
that decision was promulgated, and during the intervening
period a general revision of the statutes of the Commonwealth
has taken place, in which many adjudications of this court
were brought under legislative revision, and many new enact-
ments were made, modifying such decisions as were thought
to be inapplicable to the present state of the Commonwealth,
no new statute or legislative provision was made upon this
subject. For these reasons, we do not feel authorized to con-
sider the ground of defence here relied upon as one novel in
principle, but we must regard it as the application of a well
settled rule of law.

It was suggested in the argument that the facts here shown

do not bring the case strictly within the definition of champerty, as the plaintiff was not to conduct the suit wholly at his own expense, but was, in the event of a failure to sustain the action, to be remunerated for his actual expenses. It is true that some of the elementary books, in defining champerty, say that " the champertor is to carry on the suit at his own expense ; " as 4 Bl. Com. 135 ; Chit. Con. (5th Amer. ed.) 675. Other books of equal authority omit this part of the definition of champerty ; as 1 Hawk. *c.* 84, § 1 ; Co. Lit. 368 *b.*

Maintenance and champerty, if we are to judge from the manner in which they are usually introduced in connexion with this subject, are deemed illegal, not from the consideration that all the expenses of the litigation are to be borne by a stranger, but in reference to the evils resulting from officious intermeddling, and upholding another's litigation by personal services as well as money ; more dangerous formerly than now, as more powerful combinations were resorted to with a view of controlling, if not overawing, the judicial tribunals. In the view we have taken of the subject, the result is, that the defence is well maintained.